## In re BALDWIN.

### (District Court, N. D. New York. January 16, 1903.)

1. BANKRUPTCY—SPECIFICATIONS IN OPPOSITION TO DISCHARGE—OBJECTIONS TO SUFFICIENCY.

It is the settled practice in the Northern district of New York to require all objections to the sufficiency of specifications of objection to the discharge of a bankrupt to be raised before the judge, on motion, within a specified time.

2. SAME—TRIAL OF ISSUES ON APPLICATION FOR DISCHARGE—OBJECTIONS TO EVIDENCE.

Objection that evidence offered on the trial of specifications of objection to a bankrupt's discharge is not within the issues must be made before or during the trial before the referee, or it is waived.

In Bankruptcy. On motion to confirm the report of the referee and grant a discharge.

David H. Agnew, for the motion.

S. L. Wheeler, opposed.

RAY, District Judge. Charles R. Baldwin filed his petition in bankruptcy on the 12th day of August, 1901. He was duly adjudicated a bankrupt, and filed his schedules, in which he omitted any mention of or reference to certain property hereafter mentioned, and which the creditor opposing the discharge now asserts was knowingly and fraudulently concealed by the bankrupt, shortly before the filing of his petition, for the purpose of keeping it as his own, and was also knowingly and fraudulently concealed during the pendency of the proceedings from the trustee, and that it was colorably transferred, with the secret and fraudulent understanding that, when discharged, it should be returned to him. It is also claimed that in fact such property at all times during the pendency of such proceedings, and down to about the time of the hearing on his application for a discharge, was so far in his actual possession as to be within his control and subject to his order, and was in fact owned by him, and knowingly and fraudulently concealed from the trustee. The bankrupt claims that such property was in fact, and more than four months prior to the filing of such petition, turned over and transferred to one Abbie M. Gay, his sister-in-law and housekeeper, in good faith, and in payment of a just claim she had against him for services, and that all of his subsequent dealings with such property or its proceeds were either as agent for the owner, or friendly acts such as he naturally would or ought to perform for his sister-in-law. If the contention of the opposing creditor is correct, and established by satisfactory evidence, the petitioner is not entitled to his discharge. The objections and specifications of the opposing creditor are quite informal and somewhat defective. But no demurrer, or motion in the nature of a demurrer, was interposed, and the parties proceeded to a hearing and went through the trial without raising the question of their sufficiency. It was then too late to raise that question. The bankrupt, by pursuing this course, waived all objections to their sufficiency. The specifications of objection plainly indicated the mat-

ters to be questioned, and there can be no pretense that the petitioner was misled or prejudiced.

It is now the settled practice of this court to require all objections to the sufficiency of the specifications to be raised before the judge on motion, within a specified time, and all orders of reference as to discharge contain such a provision. Objections must be made prior • to the trial or during the trial that the evidence is not within the issue framed. Where an issue has been tried without objection, it is too late to object that it was not within the pleadings.

In September, 1900, this petitioner, Charles R. Baldwin, moved from Ausable Forks, N. Y., to Syracuse. He then owned property of the value of at least $2,750, including real estate valued at $700. He was owing $975, exclusive of the alleged claim of Mrs. Gay, his sister-in-law. While in Syracuse he worked for or in a company of some kind, and received from $50 to $100 per week. In Syracuse he sustained some losses,—how or how much does not appear. At Christmas time he returned to Ausable Forks. August 12th following, he filed his petition in bankruptcy. About March 1, 1885, said Abbie M. Gay, an alleged creditor of the bankrupt, commenced living with him and keeping his house; his wife having died. She was to take charge of his family,—his household,—and, it is claimed, do his work, for pay. Mrs. Gay says she was to have $3 per week, and that this bargain was made at his house shortly after the death of Mrs. Baldwin. She concedes that nothing was paid her, —nor does it appear that she demanded anything,—until November, 1900, when Baldwin got into financial trouble in Syracuse. The bankrupt himself testified that no price for the services of Mrs. Gay was fixed until near December, 1900, after he knew he was insolvent. On a prior occasion, Baldwin testified there was no agreement Mrs. Gay should have pay for her services when she came to his home to live. As an original proposition, this court would hold that the evidence falls short of establishing a claim in her favor. The stories told by Mrs. Gay and Baldwin are inherently improbable, and they contradict themselves and each other. It is not credible that this woman worked nearly 15 years at the agreed price of $3 per week, and received nothing during the time. But it appears that the claim was presented, proved, and allowed by the referee. It is of doubtful propriety for this court now, on the application for a discharge, to find and hold that this was a bogus claim. Mrs. Gay says that in November, 1900, she had a settlement with Baldwin, and received $267, also a deed of his land at $700, and a note for $211 (cannot tell whose note), and a further sum of $200 in cash; "some of that quite recently, and some some time ago"; some of it within two weeks of her examination, which took place on March 20, 1902, on a hearing for the discharge of Baldwin. Of this she received $100 from one Fred Hinds, who paid it for Baldwin on his order to pay that sum to her. She also says the $267 was not paid in cash, but by turning over to her a note given by one Flint. She then states that March 1, 1889 or 1890, Baldwin gave her his note for $500, for money she had loaned him. When the note was produced and put in evidence, it bore date May 1, 1899,—10 years later. She

gave other interesting testimony, not necessary to mention. Mr. Hinds says he did not pay any money directly to Mrs. Gay; that he received from Baldwin, the bankrupt, notes given by Dr. Baldwin; that Baldwin, the bankrupt, left them with him for collection; that he collected the notes and turned the money over to him. When Baldwin left the notes with Hinds, he gave as a reason that he had had trouble in Syracuse, and might have trouble in collecting. On the morning of the examination of this witness, Hinds paid over to Baldwin, the bankrupt, $100, which he received from Dr Baldwin the previous November on one of these notes, and had held in his own hands. Just why he held it, does not appear. This was paid Baldwin by Hinds at the hotel in the presence of Mrs. Gay, and Baldwin then handed it to Mrs. Gay. This occurred about three months after the petition was filed. February 5, 1901, after one of the Dr. Baldwin notes had been paid to Hinds, Hinds & Son gave to Charles N. Baldwin a paper of which the following is a copy: "$211.70. We owe Charles Baldwin $211.70 for G. E. Baldwin's notes transferred to us. [Signed] W. H. Hinds & Son." Baldwin, the bankrupt, says that in April following (he fixes no date) he wrote the following on that paper, "Pay the above demand to Abby M. Gay," and delivered it to her. But the money collected by Hinds of Dr. Baldwin was not paid to Mrs. Gay, but to Charles N. Baldwin, and then handed over to her. The whole transaction is suspicious, and the evidence that this property was transferred to Abbie M. Gay is far from satisfactory. Why was Hinds, the employer of Baldwin, holding onto this money during the pendency of this proceeding for a discharge? Why was it paid over at a hotel on the very eve of Mrs. Gay's examination? Why was Baldwin, the bankrupt, present when it was paid over, and why was it paid to Baldwin, and not to Mrs. Gay? How is it that Mrs. Gay shows such ignorance of this Hinds duebill or memorandum of indebtedness, if it was delivered to her in April, 1901, and kept by her until paid? She could not tell who signed it. It may be instructive to know where and how Mrs. Gay obtained her clothing, etc., from March, 1885, to May, 1899, if she received no pay for her work, and had no income from other sources, of which there is no pretense. Why was it that Mrs. Gay exacted a note for the borrowed money, and said nothing as to the $2,184 due her for work, labor, and services? Substantially the whole of Baldwin's property passed into the hands of Mrs. Gay in alleged part payment of a stale and doubtful claim, of which no outside parties had knowledge, shortly before the petition in bankruptcy was filed.

This matter should go back to the same referee for a further hearing, if either party desires to produce additional testimony. The objecting creditor may file within 20 days amended specifications of objections, and the referee will report his findings of fact and conclusions of law, separately stated. A copy of any amended specifications will be served on the attorney for the bankrupt, who may demur to same, or move before the court to make them more definite and certain, within 10 days thereafter, in default of which all objections thereto will be deemed waived. It is so ordered.